IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-02962-MSK-KLM

MARGARET SADLER, and
LOUIS SADLER,

    Plaintiffs,

v.

THE BANK OF NEW YORK MELLON, and
SHELL POINT MORTGAGE SERVICING,

    Defendants.

_____

**OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' ("the Sadlers") *pro se*[1] Motion for Preliminary Injunction **(# 27)**, and the Defendants' response **(# 29)**; and the Sadlers' Motion for Expedited Consideration **(# 30)**, which the Court now denies as moot.

**FACTS**

Because the Plaintiffs' Complaint **(# 6)** is somewhat unclear, the Court turns to the Scheduling Order **(# 22)** for a recitation of the pertinent facts. The Sadlers reside in a home in Castle Rock, Colorado. The home is encumbered[2] by a mortgage note in the principal amount of

---

[1] Because of the Sadlers' *pro se* status, the Court construes their filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

[2] The Scheduling Order is somewhat unclear as to who is the nominal owner and mortgagor of the property. It states, as an undisputed fact, that the mortgage was given by Plaintiff Margaret Sadler (raising some question as to whether Plaintiff Louis Sadler has any standing in this action, but the Court need not resolve that question at this time). However, the Scheduling Order also indicates that the purpose of the note was so that "the Plaintiffs' daughter,

1

$295,000 and Deed of Trust, originally issued in favor of America's Wholesale Lender.  At some point between 2007 and 2014, the note and Deed of Trust were assigned to Defendant Bank of New York Mellon ("BNY") and serviced by Defendant Shell Point Mortgage Servicing ("Shell").  The note fell into default in or about 2007.  BNY commenced a foreclosure action at that time, but according to the Sadlers, because BNY presented "three separate versions" of the promissory note, the Colorado District Court for Douglas County dismissed the foreclosure action.  BNY and Shell commenced several more foreclosure proceedings, but dismissed them for various reasons.  In 2017, BNY commenced a new foreclosure proceeding.  The Sadlers contend that BNY presented a fourth version of the note in this proceeding, and that the note "is not the original."  Nevertheless, the Douglas County court was apparently persuaded: it authorized a foreclosure sale, BNY was the high bidder for the property with a bid of $408,000, and the Douglas County Public Trustee eventually issued a certificate of purchase to BNY, transferring title to the property.

The Sadlers' claims are not well-articulated in either the Complaint or Scheduling Order, They consist largely of an assertion that the Defendants committed "deception [and] fraud" and violated an array of statutes the Sadlers identify only by their initials --  the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; the Home Affordable Modification Prograrm ("HAMP"), an uncodified Treasury Department program created pursuant to the Emergency Economic Stabilization Act, 12 U.S.C. § 5201; the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a); the Truth In Lending Act ("TILA"), 15 U.S.C. §

---

Rebecca Pugach, and her husband <u>could purchase a home and make payments on the note</u>."  (Emphasis added.)  The Scheduling Order goes on to state that, "unbeknownst to the Plaintiffs," Ms. Pugach and her husband "defaulted on the note," seemingly suggesting that Ms. Pugach was the titled owner of the house and obligor on the note.  The Court need not conclusively resolve this issue for purposes of the instant motion.

1601 *et seq.*; the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5531 and 5536 – along with "various Colorado statutes" (apparently including the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq.*) "and other illegal practices."[3]

On March 2, 2018, the Sadlers filed the instant Motion for Preliminary Injunction **(# 27)**. That motion explains that the Defendants "posted a demand for possession" on the Sadlers' home in February 2018 – that is, BNY commenced a Forcible Entry and Detainer ("FED" action) in the Colorado District Court for Douglas County, seeking the Sadlers' eviction from the home. The Sadlers state that they "should be subject to the rulings of only one court, not two" and request that the Court "grant relief from any eviction process by the Defendants until the Complaint [in this case] is resolved." They explain that they are "both in their mid-70s and experiencing the infirmities that come with aging," as well as caring for a grandchild with special needs.

The FED action is set for trial on April 2.

## ANALYSIS

**A. Standard of review**

The Sadlers seek a preliminary injunction restraining the Defendants from prosecuting the FED action. A party seeking a preliminary injunction is required to show: (i) the party will suffer an imminent and irreparable injury if the injunction is denied; (ii) a likelihood of success on the merits of the claims in the action; (iii) a balancing of the equities tipping in favor of the party seeking the injunction; and (iv) that the requested injunction is not injurious to the public interest. *McDonnell v. City and County of Denver*, 878 F.3d 1247, 1252 (10th Cir. 2018). In

---

[3] The listing of statutes in the Scheduling Order appears to omit a reference to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 and 1681s-2, found in the Sadlers' Complaint.

addition, pursuant to Fed. R. Civ. P. 65(c), the Court must require the movant to "give[ ] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

**B. Threshold issues**

There are several obstacles that prevent the Court for reaching the Sadlers' request for an injunction on the merits. The Defendants have argued that the Anti-Injunction Act, 28 U.S.C. § 2283, prevents the Court from enjoining the FED action. That statute provides that the Court "many not grant an injunction to stay proceedings in a State Court" unless: (i) a federal statute provides for such injunction, (ii) the Court must enjoin the state proceeding in order to preserve its jurisdiction over the case, or (iii) the Court has issued a judgment that requires such an injunction. Although it is not entirely clear whether the Sadlers request that this Court enjoin the state court from hearing the FED action, or whether they simply request that this Court enjoin BNY from prosecuting that case, the difference is not material. The Anti-Injunction Act also prohibits injunctions directed at private parties where the injunction would prohibit the party from using the results of a state court proceeding. *U.S. v. Billingsley*, 615 F.3d 404, 409 (5th Cir. 2010). Federal courts have routinely concluded that the Anti-Injunction Act prevents them from enjoining state eviction proceedings. *Bond v. JP Morgan Chase Bank*, 526 Fed.Appx. 698, 701-02 (2d Cir. 2013) (*dicta*); *Powers v. Bank of America*, 63 F.Supp.3d 747, 752 (E.D.Mi. 2014). As set forth below, the Court finds that none of the statutes that the Sadlers invoke provide for injunctive relief to halt an eviction, and the Court finds that none of the Sadlers' putative claims depend on their presence in the home to secure this Court's jurisdiction. To the contrary, the Sadlers' claims are *in personam* claims that the Sadlers can assert regardless of whether they are

living in the home, an apartment, or on a yacht. Thus, the Court declines the Sadlers' request solely on the strength of the Anti-Injunction Act.

The Court also has concerns that the Sadlers' request would be barred by the *Rooker-Feldman* doctrine. That doctrine prohibits a party who lost in a concluded state court proceeding from invoking federal jurisdiction in an effort to upset the state court's judgment. *Dillard v. Bank of New York*, 476 Fed.Appx. 690, 691-92 (10th Cir. 2012). The Sadlers appear to be asserting that, although the state court has approved BNY's foreclosure on the home and issued a confirmation deed, they contend that the note BNY presented during that proceeding was fraudulent or otherwise inauthentic. By requesting that BNY be precluded from evicting them from the home, the Sadlers appear to be suggesting that this Court should somehow find fault with the state court's conclusive determination on the foreclosure action, which has been completed. To do so would violate the *Rooker-Feldman* doctrine.

The Court also agrees with the Defendants that the doctrine of *Younger* abstention would also counsel against this Court interfering in the FED action. *See e.g. Flemming v. Sims*, 2017 WL 8314665 (D.Colo. Aug. 1, 2017); *Davis v. Deutsche Bank National Trust Co.*, 2016 WL 8670507 (D.Colo. Dec. 30, 2016); *Virostek v. IndyMac Mortgage Servs.*, 2011 WL 6937185 (D.Colo. Sept. 6, 2011).

### C. Preliminary Injunction Factors

1. Irreparable injury

Were the Court to proceed to consider the actual preliminary injunction factors, the Sadlers' first difficulty is in establishing that they will be subjected to an irreparable injury if their requested injunction is denied. The existence of such an injury is "the single most important prerequisite for issuance of a preliminary injunction." *New Mexico Dept. of Game and*

*Fish v. U.S. Dept. of the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017). The harm in question must be one "that cannot be compensated after the fact by money damages" and must be "both certain and great, and not merely serious or substantial." *Id.*

If the FED action proceeds and BNY is successful, the Sadlers will be evicted from the home they currently reside in. The Court is well-aware that such a situation is sad, stressful, and disruptive for all of the home's residents. At the same time, certain facts are undisputed, most significantly, that <u>the Sadlers no longer own the home</u>. The certification of the foreclosure sale and BNY's filing of the confirmation deed in November 2017 extinguished any interest that the Sadlers may have had in the property and vested all ownership and title in the home in BNY. C.R.S. § 38-38-501. Put simply, BNY now owns the home and the Sadlers do not. As difficult as it may be for them to be evicted, such an eviction does not amount to an injury, much less an irreparable one, because the Sadlers no longer have any legal right to occupy the home without BNY's consent. Accordingly, the Court finds that the Sadlers have not demonstrated that they will suffer an irreparable injury if the FED action proceeds.

### 2. <u>Likelihood of success on the merits</u>

If the Court were to turn to the other preliminary injunction factors, the Sadlers face further obstacles. It is difficult to assess whether the Sadlers have any likelihood of succeeding on the merits of their claims because it is not entirely clear to the Court what claims the Sadlers actually assert. The Court can readily eliminate some of their potential claims. It is well-settled that there is no private right of action for aggrieved individuals under the FTCA; all enforcement of that statute's provisions be done by the Federal Trade Commission. *See McNees v. Ocwen Loan Servicing, LLC*, 2017 WL 1386360 (D.Colo. Feb. 16, 2017), *citing Baum v. Great Western Cities, Inc.*, 703 F.2d 1197, 1209 (10th Cir. 1983). Similarly, the CFPA delegates all

enforcement power to the Consumer Financial Protection Board, and the statute does not authorize individuals to bring private actions. *See* 12 U.S.C. § 5531. HAMP, being simply a collection of guidelines, does not have any enforcement mechanisms whatsoever, much less ones that can be invoked by aggrieved individuals such as the Sadlers. *Molina v. Aurora Loan Services, LLC*, 635 Fed.Appx. 618, 626 (11th Cir. 2015).

The Sadlers could conceivably assert claims under RESPA, TILA, FCRA, and even the Colorado Consumer Protection Act, but it is not clear how success under any of these statutes would lead to permanent relief from BNY's FED action. In other words, even if the Sadlers succeeded on any claim under these statutes, the remedies available to them would not include undoing the foreclosure sale and restoring the Sadlers' title to the property; at most, the Sadlers can only recover money damages under these statutes.[4] *See* 12 U.S.C. § 2605(f) (remedies under RESPA limited to actual damages); 15 U.S.C. § 1640(a) (remedies under TILA limited to actual damages and liquidated damages); 15 U.S.C. § 1681n and 1681o (FCRA remedies include actual and punitive damages); C.R.S. § 6-1-113(2)(a) (remedies under Colorado Consumer Protection Act limited to actual or statutory damages, possibly trebled).

    3. <u>Balancing of the equities</u>

Even if the Court were to conclude that the Sadlers could establish the first two elements for a preliminary injunction, the Court finds that the balance of equities does not tip in their

---

[4]     In certain circumstances, TILA allows a borrower to rescind a mortgage transaction entirely. 15 U.S.C. § 1635(a). However, even under the most favorable circumstances to the borrower, such a rescission must be made within three years of the closing of the mortgage transaction. 15 U.S.C. § 1635(f); *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S.Ct. 790, 792 (2015). According to the undisputed facts in the Scheduling Order, the Sadlers' mortgage was completed in or about 2004, and thus, their ability to rescind that transaction expired long ago. In any event, even if the Sadlers could rescind the mortgage at this time, they would be required to return the $295,000 they received as part of the mortgage transaction. 15 U.S.C. § 1635(b). The Court assumes, given the present circumstances, that the Sadlers lack the resources to do so.

7

favor. The Sadlers apparently admit that the mortgage note on the home is in default, and indeed, it is undisputed that BNY has foreclosed upon the home. The equities would favor the Sadlers if they could allege and prove that they had made all the required mortgage payments, but if they are in default, the equities demand that the relinquish a home for which they are not making payments. The Sadlers' age and family circumstances do not alter this conclusion; many delinquent borrowers are elderly, infirm, have young children, or otherwise possess special circumstances that make foreclosure and eviction particularly awkward. The law does not deprive a lender/owner like BNY the ability to recover the use of its property simply because a delinquent borrower has fallen on hard times (indeed, <u>most</u> delinquent borrowers will have fallen on hard times). More importantly, evicting the Sadlers from the home creates the opportunity for BNY to lease or sell the home to a new resident (perhaps another elderly one or one with special needs children) who <u>will</u> make regular payments for it.

        4. <u>Security</u>

Even if the Sadlers could demonstrate all of the elements entitling them to a preliminary injunction enjoining the FED action, the Court would also require the Sadlers to post security to compensate BNY for the loss of its ability to lease or sell the home pending resolution of this case. At a minimum, such security would include the lease amount that the home would command on the open market. BNY estimates that amount to be $2,500 a month, and the Sadlers have not offered evidence to the contrary. Given that this lawsuit would likely continue for a year or more, and given the Sadlers' previous failure to make periodic mortgage payments as required, the Court would be inclined to require a full year's worth of rent -- $30,000 – to be posted upfront as security by the Sadlers and held in escrow by the Court. The Sadlers have not represented that they stand ready and willing to post security in that amount.

Accordingly, the Sadlers' Motion for Preliminary Injunction **(# 27)** is **DENIED**. The Sadlers' Motion to Expedite **(# 30)** is **DENIED AS MOOT**.

Dated this 29th day of March, 2018.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge